USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-9-14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

GINA MESTOUSIS,

                    Plaintiff,

        -against-

TRAVCO INSURANCE COMPANY,

                    Defendant.

-----------------------------------------------------------x

                                 13 Civ. 83 (PKC)

                                 MEMORANDUM
                                 AND ORDER

CASTEL, U.S.D.J.

        The Pelham Manor home of plaintiff Gina Mestousis suffered severe damage in an October 2010 fire. The dwelling's repairs eventually expanded to include an extensive redesign and enlargement of the original structure. It is undisputed that at some point during the dwelling's partial demolition and reconstruction, heavy equipment damaged plaintiff's driveway, walkways, sprinkler system, lawn, soil, flowers, trees and shrubbery. Plaintiff claims that a homeowner insurance policy (the "Policy") issued by defendant Travco Insurance Company ("Travco") covers this damage to the property's grounds. Travco argues that its coverage obligations are limited to damage that occurred only as a direct result of the fire and necessary reconstruction, and that any damage to the grounds was exclusively a product of the plaintiff's expansion of the dwelling.

        Plaintiff asserts one cause of action for breach of contract, and seeks $190,180 in damages. (Docket # 1.) She commenced the action in the New York Supreme Court, Bronx County. (Docket # 1.) Invoking diversity jurisdiction, Travco removed the action to this Court on January 3, 2013. (Docket # 1.) The parties agree that New York law governs their dispute.

Travco now moves for summary judgment in its favor pursuant to Rule 56, Fed.

R. Civ. P.  (Docket # 24.)  The Court heard argument from the parties on June 30, 2014.

Because there is conflicting evidence as to whether the property's grounds were damaged as a

result of the dwelling's expansion and renovation, or whether the damage occurred as a result of

work to repair loss caused by the fire, Travco's motion is denied.

SUMMARY JUDGMENT STANDARD.

Summary judgment "shall" be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Rule 56(a), Fed. R. Civ. P.  It is the movant's initial burden to come forward with

evidence on each material element of its claim or defense, sufficient to demonstrate its

entitlement to relief as a matter of law.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d

241, 244 (2d Cir. 2004).  In raising a triable issue of fact, the non-movant carries only "a limited

burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt

as to the material facts,' and come forward with 'specific facts showing that there is a genuine

issue for trial.'"  Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting

Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).

A fact is material if it "might affect the outcome of the suit under the governing

law," meaning that "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986).  The Court must

view the evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in its favor, granting summary judgment only when no reasonable trier of fact could

find in favor of the nonmoving party.  Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir.

2011); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986).

In reviewing a motion for summary judgment, the court may scrutinize the record, and grant or deny summary judgment as the record warrants.  Rule 56(c)(3), Fed. R. Civ. P.  In the absence of any disputed material fact, summary judgment is appropriate.  Rule 56(a), Fed. R. Civ. P.

"A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation."  Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (citations omitted); see also Anderson, 477 U.S. at 249-50 (summary judgment "may be granted" if the opposing evidence is "merely colorable" or "not significantly probative") (citations omitted).  An opposing party's facts "must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions."  Contemporary Mission. Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 n.14 (2d Cir. 1981) (internal quotation marks and citation omitted).

OVERVIEW OF THE PARTIES' SUMMARY JUDGMENT SUBMISSIONS.

Travco moved for summary judgment on January 21, 2014.  (Docket # 24.)  Its submissions include a statement of undisputed facts required by Local Civil Rule 56.1, along with 19 exhibits totaling several hundred pages.  (Docket # 25, 29.)  Travco also has submitted two expert declarations and reports.  (Docket # 27-28, 29-26, 29-69.)  In opposition, plaintiff has submitted no Local Rule 56.1 statement, and her evidence in opposition consists of a two-page letter that is described as an expert report from Peter Zotis of Graystone Construction Management LLC in Queens.  (Docket # 35.)  Zotis's report is not accompanied by an affidavit or declaration.

"[W]hile a court 'is not required to consider what the parties fail to point out' in their Local Rule 56.1 statements, it may in its discretion opt to 'conduct an assiduous review of

the record' even where one of the parties has failed to file such a statement." Holtz v.

Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001).  In this instance, plaintiff's failure to

submit a statement pursuant to Local Rule 56.1 plays no role in the outcome of this motion, and

all reasonable inferences are drawn in her favor as the party opposing a motion for summary

judgment.  It remains Travco's burden to come forward with evidence that entitles it to judgment

as a matter of law.  Vt. Teddy Bear Co., 373 F.3d at 244.

DISCUSSION

The relevant facts concerning the initial damage to plaintiff's property and

Travco's responses appear to be undisputed.  Travco issued a homeowner's insurance policy to

plaintiff for her residence on Elm Tree Lane in Pelham Manor, New York.  (Def. 56.1 ¶ 1.)  Its

terms were effective from July 14, 2010 to July 14, 2011.  (Def. 56.1 ¶ 1.)

On or about October 27, 2010, a fire that began on the home's deck caused

extensive damage to the back of the dwelling's structure and frame, along with severe smoke,

soot and water damage to the interior.  (Def. 56.1 ¶ 5.)  Travco received timely notice of the

incident, and sent an adjuster to perform a site inspection on November 1, 2010.  (Def. 56.1 ¶¶ 6-

8.)  On or about March 24, 2011, Travco submitted to plaintiff an estimate of damage to the

dwelling, and concluded that it totaled $976,202.13.  (Def. 56.1 ¶ 10.)  The estimate included the

cost of demolition for the damaged structure.  (Docket # 29-77, at 78.)  The estimate did not

include the costs of burglar alarm systems, landscaping or underground sprinkler repair.  (Def.

56.1 ¶ 13.)  Plaintiff accepted the estimate.  (Def. 56.1 ¶ 11.)

It is undisputed that the rebuilding process eventually grew beyond repairing the

dwelling to its original condition, and included an expansion of the footprint of the home and

substantial structural renovation.  Plaintiff hired an architecture firm to develop and file plans

drawn in connection with repair and reconstruction.  (Def. 56.1 ¶¶ 15-16.)  She thereafter filed

the plans with the New York City Department of Buildings, received necessary building permits

and commenced demolition and reconstruction.  (Def. 56.1 ¶¶ 17-20.)  The home was extended

by approximately eight feet on its east side, seven feet on its north side and 14 feet on its south

side, including expansion of the foundation.  (Docket # 29-26, at 8-9.)  The Mestousis family

also added a swimming pool to the property.  (Def. 56.1 ¶ 20.)  Plaintiff does not purport to seek

coverage for any loss that occurred as a result of expanding the home or constructing the

swimming pool, and maintains that the disputed loss occurred solely as a result of fire-related

demolition.

On or about August 13, 2012, plaintiff's public adjustor, acting on plaintiff's

behalf, e-mailed Travco a claim seeking additional payment of $190,180, a figure that was

derived from an estimate provided by General Landscaping, Inc.  (Def. 56.1 ¶ 24; Gill Dec. Ex.

H.)  Plaintiff sought the additional payment in order to repair damage sustained to her driveway,

walkways, stone borders, irrigation system, lawn, topsoil, flowers, trees and shrubbery.  (Def.

56.1 ¶ 27.)  On August 13, 2012, the Travco claims adjuster handling her policy replied in an e-

mail that "the landscaping was not damaged as a result of this rear deck fire."  (Gill Dec. Ex. I.)

The e-mail attached seven images of "all exterior elevations" and asked whether plaintiff would

like a formal denial letter.  (Gill Dec. Ex. I.)  On August 21, 2012, Travco stated in a letter that

the property was "not damaged as a result of fire loss" and that any damage would not have

happened "as a result of repairing the house to a pre-loss condition."  (Gill Dec. Ex. J.)  The

August 21 letter concluded: "In view of the fact that your landscaping claim is a direct result of

entirely reconfiguring and substantially increasing the size of your home, we must regretfully

deny coverage for this portion of your claim."  (Gill Dec. Ex. J.)

In a letter dated October 5, 2012, counsel to plaintiff asked Travco to reconsider the denial. (Gill Dec. Ex. K.) It asserted that the dwelling's structure and foundation suffered extensive fire damage that required its partial demolition. (Gill Dec. Ex. K.) It stated that the demolition phase required use of heavy machinery that moved using metal tracks and rollers. (Gill Dec. Ex. K.) In a letter of October 11, 2012, Travco stated that there was no damage to the property's grounds as a result of the fire. (Gill Dec. Ex. L.) It also stated that Travco's investigation of the premises "revealed that with proper precautions, the above mentioned items would not sustain damage as a result of repairing the dwelling to a pre-loss condition. Your client's aforementioned claim was the direct result of her decision to entirely reconfigure and substantially increase the size of the dwelling, therefore coverage for this portion of your clients [sic] claim was regretfully denied." (Gill Dec. Ex. L.)

This chronology of events concerning the history of the fire and the parties' initial coverage positions is undisputed. However, the parties disagree as to whether the Policy covers the damage to the hardscape (the driveway and walkways) and softscape (plaintiff's lawn and greenery). According to Travco, the damage arose solely as a consequence of the expansion of the home and its related renovations, not from loss caused directly by the fire or work to return the dwelling to its pre-loss condition. The plaintiff asserts that the damage caused to the hardscape and softscape was a necessary consequence of safely and effectively demolishing the fire-damaged portions of the dwelling and not from the expansion of the building's footprint. Because the record contains facts that support each side's version of events, Travco's motion for summary judgment is denied.

"It is well established that '[i]n determining a dispute over insurance coverage, we first look to the language of the policy.' In doing so, we must 'construe the policy in a way that

affords a fair meaning to all of the language employed by the parties in the contract and leaves

no provision without force and effect.'" Roman Catholic Diocese of Brooklyn v. Nat'l Union

Fire Ins. Co. of Pittsburgh, Pa., 21 N.Y.3d 139, 148 (2013) (quoting Consolidated Edison Co. of

N.Y. v. Allstate Ins. Co., 98 N.Y.2d 208, 221-22 (2002)) (internal citation omitted).  Courts

interpret policy language according to its plain meaning, and the interpretation of policy

language is an issue of law for the Court.  White v. Continental Cas. Co., 9 N.Y.3d 264, 267

(2007).  "[T]he insured 'bears the initial burden of showing that the insurance contract covers the

less,' i.e., that the loss results from the covered peril."  Potoff v. Chubb Indem. Ins. Co., 60

A.D.3d 477, 477 (1st Dep't 2009) (quoting Roundabout Theatre Co. v. Continental Cas. Co., 302

A.D.2d 1, 6 (1st Dep't 2002)); accord Chase Manhattan Bank v. Travelers Grp., 269 A.D.2d 107,

108 (1st Dep't 2000) ("plaintiffs must demonstrate that the policy provided coverage for the

loss.").

> In support of its motion, Travco principally relies upon the following provision:

> **COVERAGE A – DWELLING**
> **COVERAGE B – OTHER STRUCTURES**

> We insure against risks of direct physical loss to property
> described in **COVERAGE A** AND **B, EXCEPT**:

> A.      WE DO NOT COVER ANY LOSS THAT RESULTS
>          FROM A PERIL EXCLUDED OR LIMITED BY THIS
>          POLICY, EVEN IF A PERIL IS A CONCURRENT
>          CAUSE OF LOSS.

(Def. 56.1 ¶ 3 & Gill Dec. Ex. A-1; emphasis and capitalization in original.)  Coverage A, which

is cited in the provision supplied by Travco, states in its entirety:

> **COVERAGE A – DWELLING**

> **We cover:**

    a.   the dwelling on the **residence premises** shown in the Declarations used principally as a private residence, including structures attached to the dwelling on the same or contiguous foundation; and

    b.   materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**.

The coverage does not apply to land, including land on which the dwelling is located.

(Gill Dec. Ex. A at 33, Homeowners 3, p. 2 of 17.)  The Policy defines "residence premises" as "the one or two family dwelling, other structures, and grounds or that part of any other building where you reside and which is shown as the 'residence premises' in the Declarations."  (Gill Dec. Ex. A at 32, Homeowners 3, p. 1 of 17.)  Separate Policy provision states that "[w]e cover trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by the following Perils Insured Against; Fire . . . ."  (Gill Dec. Ex. A at 34-35, Homeowners 3, p. 3-4 of 17.)

The parties agree that, under the terms of the Policy, fire is a "peril insured against," and that Travco has a coverage obligation for loss caused by fire, including costs necessary to return the dwelling to its original condition.  Travco contends, however, that any damage to the property's softscape and hardscape is not a covered peril because it occurred as a direct consequence of the dwelling's expansion and renovation.  Specifically, the parties dispute whether the use of heavy equipment and dumpsters on the property, which damaged the softscape and hardscape, was necessitated by the expansion and renovation of the property, or whether, alternatively, it occurred as a result of demolition necessary to remove fire-damaged portions of the structure.

A reasonable juror could conclude that at least some of the damage to plaintiff's softscape and hardscape arose as a necessary consequence of the fire, and that the loss is

therefore a covered peril under the Policy.  Travco's motion for summary judgment is therefore

denied.

First, there is conflicting evidence as to whether heavy equipment was used to

expand the home and its foundation, or, alternatively whether it was used to facilitate the safe

demolition of the fire-damaged structure.  The heavy equipment included an excavator with

metal tracks, a backhoe with rubber wheels and a Bobcat, which is a smaller machine used to

remove debris.  (P. Mestousis Dep. at 129.)  The experts retained by Travco have opined that any

demolition work caused by the fire should have been performed by hand, and that if the work

had been performed by hand, the use of heavy equipment would not have been necessary and the

corresponding damage to the softscape and hardscape would not have occurred.[1]  (Docket # 29-

26, at 6-7; Docket # 27 ¶ 9.)  However, Peter Mestousis, the plaintiff's husband, who is also an

insured under the Policy, testified that during the initial demolition phase, "they had to bring in

excavating equipment with the tracks," and that the "excavator that drove through the other side,

on the east side of the house, on the grass started ripping the house apart."  (P. Mestousis Dep. at

87-88.)  He testified that once demolition commenced, workers realized that the roof's rafters

and beams had been heavily damaged by smoke, "[s]o now there's more work that needs to be

done" and "we continue with the demolition."  (P. Mestousis Dep. at 89.)  During the demolition,

falling debris damaged shrubbery, and the property's sprinkler system was removed.  (P.

---

[1] In support of its summary judgment motion, Travco has submitted two expert reports and declarations.  One expert report is co-authored by Joseph C. Cannizzo and Benjamin Schutzman.  (Docket # 29-26.)  Cannizzo is identified as principal and chief engineer of the forensic division at Fortech Ltd.  (Docket # 29-68.)  He has 24 years of experience as owner of a construction company and 10 years as a partner in an engineering consulting firm.  (Id.)  His curriculum vitae recites experience working on several major construction projects in New York City and the surrounding area.  (Id.)  Schutzman is a licensed landscape architect with a master's degree in urban design.  (Id.)  He has 30 years of experience in construction, including 18 years as the owner and project architect and engineer of a construction company.  (Id.)  The second Expert Report is authored by Vincent Salierno.  (Docket # 29-69.)  Salierno has been the president and director of Rebuild General Contractors, Inc. since 1979.  (Docket # 29-85.)  His curriculum vitae states that he has experience in new construction, fire and water restoration, and that he consults with the insurance industry on matters including repair procedures, new construction and damage estimates.  (Id.)

Mestousis Dep. at 90.)  According to Peter Mestousis, the removal of the sprinkler system early in the demolition process also left the property's trees and lawn without irrigation, and therefore unsalvageable.  (P. Mestousis Dep. at 92.)  As demolition continued, additional smoke and water damage was discovered, which expanded the scope of the demolition and the area on which heavy machinery was used on the property's grounds.  (P. Mestousis Dep. at 89-92.)

There is also some evidence that the use of heavy equipment revealed serious fire-based damage to the dwelling's foundation, which led to the subsequent decision to expand the dwelling's footprint.  At the argument of June 30, counsel to Travco argued that the use of heavy equipment was required in part because the Mestousis family elected to expand the foundation of the dwelling.  But, according to Peter Mestousis, during initial demolition, "I got to that area and saw that the foundation clearly cracked right through from the heat."  (P. Mestousis Dep. at 178.)  He stated that once the fire-damaged rear porch was removed, "we realized that the crack from the house went straight through to the foundation.  They cleaned it up and verified that the foundation had damage to it."  (P. Mestousis Dep. at 88-89.)  According to Peter Mestousis, only at this point – after discovery of the crack in the foundation and the initial use of heavy machinery in the demolition process – did he and the plaintiff decide to expand the footprint of the dwelling and undertake substantial renovation to it, beyond merely repairing damage caused by the fire.  (P. Mestousis Dep. at 113-14, 145-47.)

The deposition testimony of Peter Mestousis is evidence that at least some of the damage caused to the property's softscape and hardscape may not have occurred as a consequence of the expansion of the dwelling, but rather, during the initial demolition of the fire-damaged structure.  This fact evidence is in conflict with the conclusions of Travco's experts.  Moreover, Travco's experts have opined that Travco's initial estimate was intended to cover only

manual labor.  (Salierno Dec. ¶ 4; Cannizzo Dec. ¶ 6.)  But the evidence cited does not self-evidently support this conclusion: it consists only of a line item of anticipated labor expenses that was contained in the initial loss estimate.  (Docket # 29-77, at 78.)  The Court is unable to discern whether the labor expenses were limited to manual labor.  Based on the record at summary judgment, a reasonable juror could conclude that the use of heavy equipment was necessary to safely complete the initial demolition phase, and that at least some of the damage to the softscape and hardscape occurred as a result of efforts to remove the damaged portions of the structure and not from its eventual enlargement and renovation.

The record here also does not resolve Travco's contention that plaintiff failed to take reasonable precautions to limit the damage done to the property's hardscape and softscape. Travco argues that, even if it has a coverage obligation for damage caused by the use of heavy machinery and on-site dumpsters, any loss occurred due to plaintiff's own failure to safeguard the grounds against damage.  However, Peter Mestousis testified that contractors attempted to use plywood to protect the driveway against damage caused by the use of heavy machinery, but that the weight of the machinery nevertheless cracked the driveway, and that "if you started getting broken pieces here or there," salvaging the driveway became impossible.  (P. Mestousis Dep. at 172-73; see also pp. 281-82.)  Peter Mestousis testified that he attempted to safeguard a large tree on the premises, but that the measures proved ineffective, and that shrubbery and landscaping were necessarily destroyed due to their proximity to the demolition site.  (P. Mestousis Dep. at 251-54.)

A trier of fact must resolve the parties' conflicting versions of events.  This motion does not turn on an interpretation of the Policy's language, but instead would require the Court to serve as a fact-finder concerning the reasonableness of plaintiff's demolition practices

and the chronology of events concerning the demolition and eventual expansion of the plaintiff's dwelling. Because a reasonable jury could conclude that the Policy covers at least some portion of the damage in dispute, the motion for summary judgment is denied.

TRAVCO'S MOTION TO STRIKE THE EXPERT REPORT IS TERMINATED.

Travco has moved to strike the expert report of Peter Zotis, which was submitted by the plaintiff. (Docket # 38.) The Court notes that the expert report is not accompanied by an affidavit or declaration. Zotis's submission does not set forth his qualifications or experience, and the reasoning contained therein is largely conclusory. Plaintiff's counsel does not dispute that Zotis was not identified in a timely expert disclosure as required by Rule 26(a)(2), Fed. R. Civ. P., and that the first time Travco was first made aware of Zotis was during the briefing of the summary judgment motion. Nevertheless, the report of Peter Zotis did not play a role in the outcome of this motion, and Travco has not been prejudiced by its submission. The motion is denied as moot. (Docket # 38.)

CONCLUSION

Travco's motion for summary judgment is DENIED. (Docket # 24.) The Clerk is directed to terminate the motion. The Clerk is also directed to terminate Travco's motion to strike. (Docket # 38.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       July 9, 2014